All right. How much time would you like to reserve for rebuttal? I think I'll reserve four minutes. I think I might need a little longer. That's fine. Whatever you want is fine. So go ahead, please. Thank you, Your Honor. May it please the Court, my name is Charity Manet, and I represent Richard Marshak, the Chapter 7 trustee and appellant in this matter. Your Honor, I'm here today because the Bankruptcy Court granted summary judgment on what we believe is a highly unusual factual record with wide-ranging factual disputes regarding issues that are factually intensive, including fraudulent intent, insider status, issues of control and alter ego status among entities, witness credibility. All of these inquiries, as I mentioned, are fact-intensive, and summary judgment is particularly disfavored when the issue of intent is at play. And the motion itself reveals some irregularities as well. For example, the movement relied on an expert witness's declaration to address factual issues, and that was stricken from the record appropriately because that witness had not been previously disclosed. But I think that fact highlights the nature of the fact disputes here. And the Court acknowledged in its ruling, actually, that there were some factual issues surrounding the issue of control, which I think is also a unique finding to find in a summary judgment memorandum decision. Essentially, the motion was based upon two pillars. One argument was that the trustee, for lack of a more elegant term, I think this is called even in some of the case law, shut up or put up motion, where the moving party says the other side has no evidence and they have the burden of proof on all issues. So that was an argument. And then the other pillar upon which the motion was based was an argument saying, here's actually what happened and here's our evidence of what happened, and there's no genuine dispute as to what happened. Let me ask you, you basically have two sets of claims that I understand, what's left anyway. And one is on the CMI notes, and I want to ask about the second set, the $1.8 million, which the trustee alleges was taken out of prime through Arteco and then to Hyundai. And my question is, I didn't see anything in the record where you identified specific transfers. It's not even clear how that happened. Were there cash transfers? Was it steel that was delivered not paid for, steel that was underpaid for? What was it? And isn't it the trustee's burden to show that there was one or more transfers? I agree that it was the trustee's burden to show that, Your Honor, and I think we did show that in an unorthodox way, albeit, but we do have admissions from Hyundai's prime witness, Mr. Jin Oh, in deposition that $1.8 million made it to Hyundai from Arteco, and that the way that that happened was concealed. It was through manipulating the price of steel that Arteco was selling to Hyundai. So it wouldn't be necessarily obvious to anybody else not involved in that transaction. I didn't see that latter part in the deposition, but about the manipulation of the steel price. But maybe I'm mistaken about that. I might be able to quote that for you, Your Honor, at least on rebuttal, if I can return to that. I'm sorry, you had a question. It certainly wasn't his word that they were manipulating the steel price. I think that's the inference that I'm making from the fact that he said that it was money, basically a transfer made through steel price. But there wasn't anything more specific about what the price differential was, when the transactions occurred, how much there were in individual transactions. My recollection is there was just this blanket statement from the one witness that $1.8 million went upstream in that fashion. Do I have that about right, or was there anything more specific? I think there's maybe nothing more specific but corroborating testimony from multiple witnesses that that's what happened, that the money, that that particular sum of money flowed through Arteco to Hyundai. In a real simple way I'm looking at this is, okay, yes, maybe $1.8 million flowed, but why, how, what, was there consideration for it? We don't have any, I can't find any record as to what the $1.8, why it was wrong or why it created a claim for the estate. I think that is addressed in two ways. It doesn't have to be wrong to be constructively fraudulent. And with regard to why it was wrong, we certainly endeavor to demonstrate that there wasn't a legitimate business purpose for that transaction. There's been a few different explanations for it, none of which have squarely been rebutted by Hyundai, but one of the explanations was that Hyundai arranged the purchase of the debtor by Arteco, and it certainly hired the attorney, Mr. Kim, to draft that stock purchase agreement, and it directed Mr. Ahn to arrange that transaction between the shareholders, the prior shareholders, and then Arteco. And then Hyundai also, I think widely the deposition testimony is affirmed that Hyundai felt it was entitled to some compensation from Arteco related potentially to that underpayment of, Arteco basically got a very good deal on purchasing that stock, and the idea was that Hyundai should be somehow compensated for that. That's a theory that the trustee has asserted. It hasn't really been rebutted and seems to be somewhat adopted by Hyundai. And another theory that the trustee has asserted with evidence is that Hyundai, for whatever reason, based apparently on a mistake according to Mr. Jin Oh, suffered a loss from another company in Korea called More Steel, and that was about a $10 million loss. And a representation allegedly was made to Hyundai that More Steel owned the debtor, and therefore Hyundai looked to the debtor to be compensated for that loss. It was, according to Mr. Jin Oh, a big fraud. So those are alternative explanations for – That's really not the way I read that testimony. The way I read that testimony is that More agreed to transfer its subsidiary prime to Hyundai in partial compensation for that loss, and that sort of happened indirectly through – I've forgotten the company with the initials. But is there anything wrong with a debtor owing money to another company saying, here, take my asset in partial payment of that? That's not a fraudulent transfer, is it, if the money is really owed? Certainly not a fraudulent transfer by the company that's transferred. Right. Mr. Oh also admitted in his deposition – I think that maybe is accurately how one of the witnesses described it, but then he also admitted in the same deposition that they found out later on that the debtor wasn't actually owned by More Steel. And then there's a separate attempt by Hyundai to thrust that debt onto the debtor prior to that stock purchase agreement, which was in the deed of guarantee, which was Exhibit D to the Minho Ahn Declaration, which came in evidence. Some of the testimony maybe regarding that declaration didn't, but that document was in evidence. And that was something that Minho Ahn testified had been presented to the debtor prior to that stock purchase agreement from Hyundai. So I agree with Your Honor. In terms of the clarity of why any of this was done, and a logical explanation, I'm afraid I probably can't give that to the court because I'm representing the trustee and we're doing the best we can to understand these transactions that we believe have multiple indicia of fraud and really no good explanation, at least not from the standpoint of arm's-length business dealings. Right now there's nothing that would allow you, you know, there's not the story that would prove your case. And, you know, you were given a continuance once and didn't ask for another one after that. I mean, what more would you have? I mean, at some point you've got to, in response to the summary judgment, produce evidence. Put up or shut up. Well, I think we've done that, Your Honor. I think this is sort of a central area of dispute that the trustee has with Hyundai, which is that do we have to pluck out of air with the best information available some all-encompassing, plausible explanation as for what was done and why? And I don't think we have to do that under the legal standards. I think we have to show, with regard to the Arteco transfer, that money did flow up. And we have deposition testimony from Taeho Cho that that money went from Prime, its profits, to Arteco and that the second leg of the transfer occurred, which Jinho admitted, which is Hyundai's witness. Even though that money was returned, it never was returned to the debtor. So I think we've shown the transfer. Under a constructive fraudulent theory, we just have to show lack of reasonably equivalent value. And none of the explanations that we've put forth in the documents show anything other than a lack of reasonably equivalent value. I don't know if I'm making a double negative there, but I hope you understand my point. There's no logical business explanation for why that money went to Hyundai. Hyundai was not, according to Hyundai's own statements, was just a purchaser of scrap steel from the debtor. So why does it get $1.8 million of money through Arteco? I think we have shown enough information to... Maybe this doesn't give exactly the reason as to what occurred and why, but for a court to say, yeah, this is constructively fraudulent and it's also actually fraudulent because we have control, less-than-arm's-length dealing, so insider status on a non-statutory basis. Control would give statutory insider status. We have insolvency. We have, I think, a number of indicia of fraud to accompany it, which, as this court has said, I think in the Walkowitz decision, there's no number of dispositive indicia of fraud. One could be sufficient. I think in this case maybe control is sufficient and would be if we got to the point, got past what the judge found in this case, which was that there was no evidence of the transfer, which I find a perplexing ruling. I think there could be better evidence, and in a perfect world, the trustee would have all of that evidence, but the way this was structured was convoluted and to be not obvious to the eye. And that's, I think the Arteco transfer might be, in terms of legal issues, the simpler one because it's run-of-the-mill constructive fraud and actual fraud, and I think we have a record in this case that's intimidating to me. It's an excess of 7,000 pages, but we have corroboration from multiple witnesses that are not employees of the trustee, not people the trustee really has control over. We certainly did our best in opposing the motion and putting forth the Minhoan Declaration with... But you'd think that, I mean, the trustee presumably has control of Prime's business records. Maybe not all that happens sometimes. You'd think that if it were underpriced steel, the trustee could go back with an expert saying, okay, at this point, the market price of steel is $160 a ton. They sold it to Hyundai for $120, and as a result, they got X dollars less. But there's really nothing like that in the record. Why couldn't that have been done? I think that would be a difficult undertaking for the trustee and one that the trustee doesn't have to do, considering the testimony that Jeno gave. I think that's their area in terms of trading in steel and difficult to prove on the Korean market what scrap steel prices are. However, the fact that they said it wasn't transferred to Arteco, I'm sorry, it wasn't transferred from Arteco to Hyundai in cash, but it was another means, and here's the amount is sufficient for the showing the trustee has to make. You're inside your four minutes. You can keep going if you want or stop if you want. It's up to you. Okay. I think I should stop. Thank you, Your Honors. Okay. Thank you. Mr. Doolittle. Thank you. May it please the Court, Jonathan Doolittle, Pillsbury Winthrop Shaw Pittman for Hyundai Steel. I'd like to apologize for being up a couple minutes late. I was here, and I failed in my communication to the Court. So the first point I'd like to make is that this is a lot simpler than the trustee makes out. There is no question about the Arteco transfer in this case. Our argument is very simple. In every case, when you're a trustee and you're seeking to avoid a fraudulent transfer, you have to show that there's a transfer from Prime to Arteco. All of the things that they are looking to, everything, all the statements point to some transaction between Arteco and Hyundai. There is not a shred of evidence that points that there was any property from Prime that was transferred to Arteco. And so essentially what the bankruptcy court correctly concluded is that that is fatal to their Arteco transfer claim. What about the statements in the deposition or declaration? I've forgotten which it was. This $1.8 million went from Prime to Hyundai via Arteco. Two things. There is nothing, if you look through all of those statements, there is nothing in any of those statements that suggests that money came from Prime to Arteco and then was transferred on to Hyundai. If you look at those statements, accepted at face value, including Mr. Ahn's declaration, which was properly excluded based on his lack of personal knowledge, there's no evidence, none, that shows that Prime's property was transferred to Arteco. And I would point you to the summary judgment pleadings that we filed, both the first brief and the reply brief where we outlined and analyzed all of those statements and showed that fact. But the larger point is it's not that complicated for a trustee to prove a transfer, right? I'm sure all three of you have done this many times. There are bank statements. There are wire remittances. There are due to, to, from accounts. There are ledgers. There are invoices. There's nothing in this record that shows a transfer from Prime to Arteco. What the trustee is trying to do is he's trying to generate a question of fact because of the separate transactions between Arteco and Hyundai. The undisputed evidence on that is that Hyundai and Arteco did a great deal of business in South Korea. It was not Prime's steal. It was Arteco's steal. They were a separate supplier, separate business. That is undisputed on this record. And in that separate business, there was a great deal of money that was flowed from Hyundai to Arteco in exchange for scrapped steel. There was no evidence in the record that showed any money flowing from Arteco to Hyundai. And the trustee would think, would say, well, gosh, that money must have come from Prime. But the undisputed record shows that there's nothing coming from Prime to Arteco, and it also shows that there's a great deal of money flowing from my client Hyundai to Arteco for their separate scrapped steel purchases. But you keep saying money flowing, but isn't it hypothetically possible that a sale of goods for a below market price could be a fraudulent transfer, assuming all the other elements are met? I mean, that's a transfer, right? You're transferring your steel. I don't discount that at all, but who cares in this case because that is not the issue here. The question of what Arteco might have done with Hyundai is not relevant to the trustee's fraudulent transfer claim standing in the shoes of Prime. If there's no transfer of property from Prime to Arteco, that is the end of the case, and that is the correct legal conclusion that the bankruptcy court found in this case. All of the noise surrounding the price adjustments that might have been made between Hyundai and Arteco, which the undisputed record also shows that they apparently reversed, are quite interesting maybe in a theoretical world but aren't relevant to the question before us, which is, is the Arteco transfer, did the bankruptcy court correctly conclude on the summary judgment record that there was no undisputed fact that they failed to show that there was a transfer of Prime's property, and we think that the court got it right. Did you have a question? I'm just manipulating the panel. I don't want to go too far down the road, but I think that the CMI notes transfer is more of the same in the sense that there's a lot of noise surrounding it, but the real question involving all of these things and what the panel has to consider is did the bankruptcy court get it right? Did the bankruptcy court make a correct legal conclusion based on the undisputed record? By the way, all this is de novo, right? It's summary judgment. Correct. Summary judgment, de novo, absolutely right. I don't think there's any real dispute over that at this point, but the essential findings on the CMI notes transfer were that there was a sale of defaulted promissory notes that were secured by real estate. They were in default. They were not receiving payment, and they were sold at par, 100% value. We've been at this a long time, all four of us. I think the more typical scenario when you're talking about the sale of a note in a distressed situation is what's the discount? How much off of par is the person going to pay to reflect the lack of payment? In this particular case, what the bankruptcy court correctly concluded is that there was no harm. What is the harm? When you sell an asset and you get all that you're legally entitled to get, that is the full amount at issue in the promissory note, and what the trustee has tried to argue is that, well, there was a potential for a windfall profit because you could have foreclosed on real estate that's worth $35 million. Now, there's no record evidence whatsoever of real estate worth $35 million, but more importantly, as a matter of fact in law, that is not a good legal theory, and the bankruptcy court correctly recognized that fact. A simple fact is all you can get when you foreclose on a note is the amount at issue in the note plus interest in your fees, and that's actually what happened in this case. So the only theory they had was that you could have foreclosed, taken title, and pocketed a mansion or whatever it was. That assumes you just do that and nobody else shows up and you end up with the asset, none of which anybody knows, right? That's right. The undisputed fact in this case is that there was no foreclosure sale. Hyundai did not take title. But if you had a foreclosure sale and Hyundai acquired the property because they had the note and somebody later says there's equity but there is a public sale or a UCC sale, how can that be other than fair consideration? Well, exactly, and there's a whole host of law out there that says that that's reasonably equivalent value, that as long as you comply with the statute. And, of course, that's theoretical, Your Honor, because in this case we didn't do that and the evidence is quite clear. What happened is Hyundai took over this obligation, which incidentally Prime was suffering from because it had to pay the Shinhan Bank loan and it wasn't able to, so the record shows that my client advanced the two payments that were past due, and then it took it off its hands and paid Shinhan Bank. So at that situation, even if we decide to look at the fraudulent transfer claim, even though they can't show harm on this record, there's no harm. If you look at the Frontier case, you look at any case, there was value given in this case in exchange, direct value, because it was part of the purchase price in a contract between two parties. And if we engage in what I think is incorrect conclusion that this is an indirect benefit case, well, there's value in the form of satisfaction of antecedent debt, which is recognized under Section 548 and under the parallel provisions of California Fraudulent Transfer Code. So really, just like on the Arteco transfer, when you really drill down and you look at everything and you look at the record and all of it, you just have to draw the conclusion that so what? Because if there's no harm, there's no claim. And if there's no claim there, then there's no claim on the alter ego claims either because those are pinned to having a successful resolution of the Arteco transfer and the CMI notes transfer. And a situation like this where the trustee has had years, years, in order to prove up their case, years to show us a bank statement, wire remittance, something that shows a transfer from Prime to Arteco, and years to show that there was some harm caused by these transfers, you have to draw the conclusion that there's nothing here. I'm happy to, if the court would like, to go through in more detail what we've already laid out in our papers, but I'm sure that you're carefully reviewing everything, and I don't want to take the court's time unless you have further questions for me. I don't have any. Okay. Thank you. Thank you very much. Thank you very much. All right. Ms. Manet, you've got two and a half minutes or so. Okay. I'll try not to talk too fast. I think just starting with one comment that opposing counsel made about the exclusion of the Minhoan testimony, I wanted to touch on that. Just to highlight one other point about how unusual some of the court's rulings were, I would just direct the court to look at the first evidentiary exclusion the judge made, which was of Mr. Minhoan's preparatory statement that, essentially, I'm above the age of 18 and I have personal knowledge of the following facts. The judge excluded that statement from the declaration. I think a lot of the court will find we tried to detail the evidentiary issues significantly in the opening brief, and I won't repeat those here, but I think the court will find that there were significant errors the court made in applying the wrong legal rule to those. But how are those errors? How do they create a harm? They create a harm because a lot of Mr. Minhoan's testimony explained the control of Hyundai, the circumstances surrounding the transfer, the fact that the Arteco transfers actually occurred. Yes. Well, we know there's a transfer that occurred, but how does that testimony that was excluded show that there was a transfer from Prime to Arteco? I think Mr. Minhoan's statement in paragraph 29 of his declaration said that Hyundai was supposed to receive $10 million from the debtor for the Moore loss, but it only received $1.8 of that. So I think there's an inference that should have been made and can be made in favor of the non-moving party on that issue. And also there's other, and this was my next point, so it dovetails well. There are multiple citations in the record. In our opposition to the summary judgment motion, paragraph 46, we cited the deposition testimony of Taeho Cho, who confirmed that from the profits of the debtor, Arteco paid Hyundai. Is there, of the excluded evidence, what evidence is there that was excluded that would support your claim that the transfer of the CMI notes was for less than reasonably equivalent value? I'm not sure that that was a central focus of the on declaration, and I think it doesn't alter what the results should be here because our argument is that the burden of proof to show the first sub-element of reasonably equivalent value, that value was given, falls on Hyundai in this case. It's alleging that it paid Shinhan Bank directly, and that was the consideration that the debtor received. I think this was conceded, too, in Hyundai's brief, that it has that burden of production to come forward. And what it came forward with, I understand the scrutiny of the trustee's evidence, but a similar reasoning should apply certainly to the moving party here where it came forward with a statement from Mr. Jin Oh that that money was paid, but there was no check, there was no wire transfer, and also the trustee challenged the credibility of Mr. Oh on numerous points because he did contradict directly some of his testimony as between his deposition and his declaration. In terms of the windfall— You're over your time, but I'll let you finish that sentence. Oh, I was just going to say, in terms of the windfall theory, the trustee's not advancing that theory. I don't think it's necessary for the court to consider on appeal. Thank you, Your Honor. I think, Your Honor, if I request that the court reverse and remand. Okay. Thank you both. The matter is submitted.
judges: FARIS, LAFFERTY, and CORBIT